1  Elayna J. Youchah, NV Bar No. 5837
   youchahe@jacksonlewis.com
2  **JACKSON LEWIS P.C.**
   3800 Howard Hughes Parkway, Suite 600
3  Las Vegas, Nevada 89169
   Tel: (702) 921-2460
4  Fax: (702) 921-2461

5  Rene E. Thorne,* LA Bar No.22875
   thorner@jacksonlewis.com
6  **JACKSON LEWIS P.C.**
   650 Poydras Street, Suite 1900
7  New Orleans, Louisiana 70130
   Tel: (504) 208-1755
8  Fax: (504) 208-1759
   *Pro Hac Vice Application Pending
9
   Attorneys for Plaintiffs
10
11              **UNITED STATES DISTRICT COURT**

12                   **DISTRICT OF NEVADA**

13  LANDRY'S, INC., a Delaware corporation;
    BUBBA GUMP SHRIMP CO.                          Case No.
14  RESTAURANTS, INC., a Delaware
    corporation; NEVADA RESTAURANT
15  SERVICES, INC. d/b/a DOTTY'S GAMING
    AND SPIRITS, a Nevada corporation;             **COMPLAINT FOR INJUNCTIVE,**
16  NEVADA RESTAURANT SERVICES, INC.               **DECLARATORY AND OTHER RELIEF**
    d/b/a LAUGHLIN RIVER LODGE, a Nevada
17  corporation; NEVADA RESTAURANT
    SERVICES, INC. d/b/a HOOVER DAM
18  LODGE, a Nevada corporation,
                        Plaintiffs,
19
                v.
20
    BRIAN SANDOVAL, in his official capacity
21  as Governor of the State of Nevada;
    SHANNON CHAMBERS, in her official
22  capacity as Labor Commissioner of the State of
    Nevada ex rel,
23
                    Defendants.
24
            Plaintiffs, Landry's, Inc.; Bubba Gump Restaurants, Inc.; Nevada Restaurant Services, Inc.
25
    d/b/a Dotty's Gaming and Spirits; Nevada Restaurant Services, Inc. d/b/a Laughlin River Lodge;
26
    and Nevada Restaurant Services, Inc. d/b/a Hoover Dam Lodge (collectively, "Plaintiffs") allege
27
    as follows:
28

JACKSON LEWIS P.C.
   LAS VEGAS

**INTRODUCTION**

1.      This action involves a challenge to Nevada's Minimum Wage Amendment, found in Article 15, Section 16 of the Constitution of the State of Nevada ("Minimum Wage Amendment" or "Amendment") and the implementing regulations found in NAC Chapter 608.100 – 608.108 (the "Regulations").  As set forth below, the Employee Retirement Income Security Act of 1974 ("ERISA") preempts the voter-passed Minimum Wage Amendment and Regulations.  In addition, the Minimum Wage Amendment and Regulations are unconstitutional under the commerce clause of Article I, Section 8 of the Constitution of the United States, the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and the Constitution of the State of Nevada.

2.      For these reasons, Plaintiffs ask the Court to preliminarily and permanently enjoin all enforcement of the Minimum Wage Amendment and Regulations and declare the Minimum Wage Amendment and Regulations to be preempted under ERISA and in violation of the Constitution of the United States.

**JURISDICTION AND VENUE**

3.      The Court has jurisdiction over this action pursuant to the federal question statute, 28 U.S.C. § 1331, because this is a civil action arising under the Constitution and laws of the United States.  More specifically, Plaintiffs bring this action because ERISA, 29 U.S.C. §§ 1001-1461, as amended, preempts Nevada's Minimum Wage Amendment and Regulations.  Thus, jurisdiction is also proper under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).  Furthermore, Plaintiffs bring this suit under 42 U.S.C. § 1983, which provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  The Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3).  Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of the State of Nevada because those claims are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy for purposes of Article III of the U.S. Constitution.  In addition, the Court may grant declaratory and related relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) because the Defendants are located in this District, private property affected by the Ordinance is situated in this District, and the events giving rise to Plaintiffs' claims occurred in this District.  Venue in the Federal District Court for the District of Nevada is also proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

### THE PARTIES

5.      Landry's, Inc. ("Landry's") is a privately owned, multi-brand dining, hospitality, entertainment and gaming corporation incorporated in Delaware.  Landry's owns and operates more than 500 restaurant and entertainment destinations in 35 states and the District of Columbia, including multiple locations in Nevada.

6.      Bubba Gump Shrimp Co. Restaurants, Inc. ("Bubba Gump"), a Delaware corporation, operates forty-three Bubba Gump Shrimp Co. restaurants worldwide, including twenty-nine restaurants in the United States.  Bubba Gump registered to do business in Nevada on June 14, 2012, and began operating its first restaurant in Nevada on December 15, 2012.

7.      Nevada Restaurant Services, Inc. d/b/a Dotty's Gaming and Spirits ("Dotty's") is a Nevada Corporation which owns and operates more than 100 taverns within the state.

8.      Nevada Restaurant Services, Inc. d/b/a Laughlin River Lodge ("Laughlin River Lodge") is a Nevada Corporation which purchased and began operating a hotel-casino in Laughlin, Nevada in September 2014.

9.      Nevada Restaurant Services, Inc. d/b/a Hoover Dam Lodge ("Hoover Dam Lodge") is a Nevada Corporation which purchased and began operating a hotel-casino in Boulder City, Nevada in December 2013.

10.      As employers in Nevada, Plaintiffs are subject to the Minimum Wage Amendment and its Regulations.  Plaintiffs are further subject to ERISA.  In 2014 and 2015, Plaintiffs Landry's, Bubba Gump, and Dotty's were sued for alleged violations of the health benefits provisions in the Minimum Wage Amendment and Regulations even though these Plaintiffs

offered health benefits plans to their employees.  Such putative class-action lawsuits have become increasingly common, as at least 11 lawsuits have been filed in Nevada in the last 18 months.[1]

11.     Defendant Brian Sandoval is the Governor of the State of Nevada.  In his official capacity, the Governor is the chief executive officer of Nevada.  He must ensure that the laws of the State are properly enforced.

12.     Defendant Shannon Chambers is the Labor Commissioner of the State of Nevada. In her official capacity, the Labor Commissioner is responsible for, among other things, enforcing and regulating the State's labor laws.  The Labor Commissioner has promulgated the Regulations and investigated wage claims based on the Minimum Wage Amendment and Regulations relating to health benefits.   As recently as April 2015, the Labor Commissioner has enforced the Minimum Wage Amendment and Regulations in a manner that violates federal and Nevada law.

## FACTS

13.     Pursuant to NRS 232, the Governor may appoint a Director of the Department of Business and Industry.  The Director of the Department of Business and Industry "serves at the pleasure of the Governor."  NRS 232.515.  Under NRS 607.020, the Director of the Department of Business and Industry appoints Nevada's Labor Commissioner as the head of the Office of Labor Commissioner.   The Labor Commissioner, pursuant to NRS 607.160, is vested with authority to enforce Nevada's labor laws and adopt regulations to carry out those laws.

14.     Under NRS 608.250, and prior to November 2006, the Labor Commissioner was authorized to "establish by regulation the minimum wage" and "prescribe increases in the minimum wage in accordance with those prescribed by federal law, unless the Labor

---

[1]     *Diaz v. MDC Restaurants, LLC*, Eighth Judicial District Court, Clark County, Nevada, A-701633; *McLaughlin v. Deli Planet, Inc.*, Eighth Judicial District Court, Clark, Nevada, A-703656; *Gemma v. Boyd Gaming Corp.*, Eighth Judicial District Court, Clark County, Nevada, A-703790; *Williams v. Claim Jumper Acquisition Co., LLC*, Eighth Judicial District Court, Clark County, Nevada, A-702048; *Perry v. Terrible Herbst, Inc.*, Eighth Judicial District Court, Clark County, Nevada, A-704428; *Lopez v. Landry's Inc.*, Eighth Judicial District Court, Clark County, Nevada, A-706449; *Perera v. Western Cab Co.*, Eighth Judicial District Court, Clark County, Nevada, A-707425; *Tyus v. Wendy's of Las Vegas, Inc.*, Federal District Court for the District of Nevada, 2:14-cv-729-GMN-VCF; *Hanks v. Briad Restaurant Group, LLC*, Federal District Court for the District of Nevada, 2:14-cv-786-GMN-PAL.

Commissioner determine[d] that those increases [we]re contrary to the public interest."  Neither NRS 608.250 nor any other labor law required or authorized the Labor Commissioner to regulate or otherwise enforce employer-provided health benefits.

15.    Nevada's 2004 general election presented Nevadans with a ballot initiative known as "Question 6" or "Raise the Minimum Wage for Working Nevadans."  Among other things, Question 6 sought to amend Nevada's Constitution to include a two-tiered minimum wage, the rates of which would deviate from the federal minimum wage based on cost of living increases. The specific question on the ballot posed to voters stated, "Shall the Nevada Constitution be amended to raise the minimum wage paid to employees?".[2]  The voters approved Question 6.

16.    Question 6, however, went far beyond simply raising the minimum wage and altering the manner in which the minimum wage would be calculated.  Indeed, the proposed amendment's terms introduced a "health benefits" component that would dictate the type of health plan an employer would be required to offer to its employees.

17.    Pursuant to Nevada law, voters must approve a proposed constitutional amendment in two consecutive general elections.  Accordingly, Question 6 was again proposed to Nevada's voters in the 2006 general election.  Once again, the description appearing on the ballot stated, "Shall the Nevada Constitution be amended to raise the minimum wage paid to employees?".  And once again, Nevada's voters approved Question 6.

---

[2]    Although not included on the ballot, the voter's guide provided the following explanation: "The proposed amendment, if passed, would create a new section to Article 15 of the Nevada Constitution. The amendment would require employers to pay Nevada employees $5.15 per hour worked if the employer provides health benefits, or $6.15 per hour worked if the employer does not provide health benefits. The rates shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living measured by the Consumer Price Index (CPI), with no CPI adjustment for any one-year period greater than 3%." *Nevada Legislative Counsel Bureau – Research Division*.

18.     On November 28, 2006, the Minimum Wage Amendment became effective and was codified as Article XV, Section 16 to the Nevada Constitution.   As codified in the Constitution, the Minimum Wage Amendment is entitled "Payment of minimum compensation to employees" and states, in relevant part:

A.   Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living. The cost of living increase shall be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%. The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1 . . . Tips or gratuities received by employees shall not be credited as being any part of or offset against the wage rates required by this section.

19.     As is apparent from the Amendment's text, there is virtually no guidance regarding "health benefits."  The Amendment's only description of "health benefits" states: "Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Art. 15, § 16(A).

20.     Moreover, the Amendment does not authorize the Labor Commissioner to regulate or enforce its provisions.  Rather, it merely states, "The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates," and that the "bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive such notice[.]"  Art. 15, §

16(A).   Therefore, beyond announcing and publishing the new rates, the Minimum Wage Amendment does not authorize the Governor, Labor Commissioner, or any other agency or officer, to establish or enforce health benefits regulations.

21.   Shortly after the Amendment became effective, however, Nevada's Labor Commissioner began issuing regulations.  The permanent implementing regulations are found in NAC 608.100 through 608.108.

22.   Through NAC 608.102, the Labor Commissioner adopted a regulation that dictates the type of health care an employer must offer to "qualify to pay an employee" the lower tier minimum wage rate.  Specifically, NAC 608.102 states that the health plan must include "those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213 and any federal regulations relating thereto, if such expenses had been borne directly by the employee" or provide benefits under the Taft-Hartley trust formed pursuant to 29 U.S.C. § 186(c)(5) and which qualifies as a "welfare benefit plan" under IRS guidelines or ERISA.  Moreover, the health plan "must be made available to the employee and any dependents," subject to a six-month waiting period, and at a rate where the employee's cost is no more than "10 percent of the gross taxable income of the employee attributable to the employer under the Internal Revenue Code," further referencing NAC 608.104.

23.   In turn, NAC 608.104 purports to establish "qualified health insurance," a concept without a basis in the Minimum Wage Amendment.  This Regulation further dictates how the 10 percent figure of NAC 608.102 and Article 15, § 16(A) is calculated.

24.   Under NAC 608.106, the employer is required to retain documentation when an employee declines coverage.  Referencing the Minimum Wage Amendment, NRS 607.160 and 608.250 (the minimum wage statute), NAC 608.108 provides that an employer that "does not offer a health insurance plan" as prescribed in NAC 608.102, or it is not made available to the employee "within 6 months of employment," then the employee is to receive the upper-tier minimum wage rate "until such time as the employee becomes eligible for and is offered coverage" under a plan that satisfies NAC 608.102's requirements.

JACKSON LEWIS P.C.
LAS VEGAS

## CLAIMS FOR RELIEF

### CLAIM I

### Declaration that ERISA Preempts the Amendment and Regulations

25.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-24 of this Complaint.

26.     ERISA is a federal law concerning private employer sponsored pensions and health plans.  ERISA has broad preemptive force on state law and regulation of employee benefits.  The primary objective of ERISA is to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91 (1983).

27.     To accomplish this objective, Section 514(a) of ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.   29 U.S.C. § 1144(a).   This preemption provision aims "to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government" and to reduce "the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).

28.     A state law "relates to" an ERISA plan "if it has a *connection with* or *reference to* such a plan." *Shaw*, 463 U.S. at 97 (emphasis added).  To make this determination, courts must look "to the objectives of the ERISA statute" as well as "to the nature of the effect of the state law on ERISA plans[.]"  *California Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 325, (1997).   State laws that "mandate employee benefit structures or their administration" are preempted by ERISA.  *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 658 (1995). Such state-imposed regulation of an employer's provision of employee benefits conflicts with ERISA's goal of establishing uniform, nationwide regulation of employee benefit plans.  *Id.* at 657-58.  Thus, courts have readily and routinely found preemption of state laws that act directly upon an employee benefit plan or effectively require it to establish a particular ERISA-governed benefit.

29.     Here, beyond altering the subject of minimum wage law in Nevada, the Amendment and Regulations radically impacted and altered health benefits offered by Nevada's private employers, such as the Plaintiffs in this matter.   In doing so, the Minimum Wage Amendment and implementing regulations unlawfully encroach on employee benefits plans, which fall under ERISA's purview.   The Amendment and Regulations, therefore, subject employers to uncertainty and additional costs, seek to substantively change health benefits, create inconsistent and undecipherable health benefits standards, and otherwise frustrate ERISA's purpose of establishing a uniform, nationwide regulation of employee benefit plans.

30.     The Minimum Wage Amendment relates to employee benefits plans because it dictates that, "Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Art. 15, § 16(A).

31.     The Regulations relate to, and have a connection with, employee benefit plans because NAC Chapter 608.100 – 608.108 dictates requirements for "qualified" health plans. Specifically, the Regulations (1) mandate the provision of benefits ("if employer does not offer a health insurance plan . . . the employee must be paid [the higher wage set forth in NAC608.100(b)])"); (2) regulate the premium amount that can be charged to employee (limited to 10% of gross taxable income and has to be calculated on an annual, per employee basis); and (3) mandate the scope of coverage that must be offered ("to qualify to pay an employee the minimum wage set forth in [NAC 608.100(a)], an employer must . . . offer a health insurance plan which . . . covers those categories of health care expenses that are generally deductible by an employee . . . pursuant to 26 U.S.C. § 21[.]").

32.     The Regulations also impermissibly impose reporting requirements on health benefits plans through the employer-plan sponsors not required by ERISA.   Specifically, under NAC 608.106, "[i]f an employee declines coverage under a health insurance plan that meets the requirements of NAC 608.102 and which is offered by the employer, the employer must maintain documentation that the employee has declined coverage."

33.     In addition, the Regulations conflict with and are preempted by ERISA because they frustrate ERISA's objective of uniform plan administration.  The Regulations impose on employers with operations in Nevada different health care obligations and reporting requirements than in other states.  An employer with employees in Nevada and elsewhere must offer its Nevada employees a "qualified" plan or else it will receive disfavorable treatment under the Regulations.  Today, for example, such an employer cannot offer a single, ERISA and Affordable Care Act-compliant plan to all of its employees without being penalized by the State of Nevada.  Thus, the Amendment and the Regulations illegally compel employers to change the administration of their ERISA-governed plans, and/or to create separate and independent plans for Nevada employees.

34.     In sum, the Amendment and the Regulations relate to, have a connection with and directly regulate employers' provision of healthcare benefits.  As a consequence, ERISA preempts the Amendment and Regulations.

**CLAIM II**

**Declaration that the Amendment and Regulations Violate
the U.S. Constitution's Commerce Clause**

35.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-34 of this Complaint.

36.     The Commerce Clause of the U.S. Constitution provides, "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States."  U.S. Const. Art. I, § 8, cl 3.  That affirmative grant of power to Congress also limits the power of state and local governments to pass legislation affecting interstate commerce (the "Dormant Commerce Clause").

37.     The Dormant Commerce Clause prohibits state laws that impose an excessive burden on interstate commerce.

38.     The Minimum Wage Amendment and Regulations impose an excessive burden on interstate commerce.  They prevent entities operating in multiple states and moving goods and services into and out of Nevada from maintaining uniform employee benefits provisions consistent with ERISA and the Affordable Care Act.

39.      The Minimum Wage Amendment and Regulations require national entities to develop unique benefit plans exclusively for their Nevada locations and employees which impose costs and other burdens far in excess of those imposed by other states and the federal government. These costs and burdens deter entities from conducting commerce in or through Nevada.

## CLAIM III

### Declaration that the Regulations Are Unconstitutional
### Because They Exceed the Labor Commissioner's Authority

40.      Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-39 of this Complaint.

41.      The Fourteenth Amendment to the Constitution of the United States, establishes that States may not "deprive any person of life, liberty, or property, without due process of law." Similarly, Article 1, Section 8, Clause 5 of the Constitution of the State of Nevada provides, "No person shall be deprived of life, liberty, or property, without due process of law."

42.      Pursuant to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

43.      In Nevada, the Governor appoints a Director as the head of the Department of Business and Industry.   The Director of the Department of Business appoints a Labor Commissioner.   As an officer of Nevada's Executive Department, the Labor Commissioner is generally authorized to enforce Nevada's "labor laws" and, to the extent properly delegated, adopt regulations in furtherance of enforcing those labor laws.   NRS 607.160.

44.      The Minimum Wage Amendment provides that the applicable minimum wage depends on whether the "employer provides health benefits."  Art. 15, § 16(A).  "Offering health benefits" under the Amendment "consist[s] of making health insurance available to the employee

for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." *Id.*

45.     The Amendment does not authorize any person or entity to enforce, administer or regulate "health benefits." *Id.* Indeed, the Minimum Wage Amendment's provision that "[t]he Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1" is the only aspect of the law that anticipates subsequent state action. *Id.*

46.     Neither Nevada's voters, nor the Legislative Department, nor the Governor, to the extent he could exercise this power, have delegated to the Labor Commissioner authority to enforce or regulate the Minimum Wage Amendment's health benefits provisions.

47.     The Governor and Labor Commissioner are "persons" acting under the color of law. By promulgating and enforcing the Regulations concerning "qualified" health benefits, when not authorized to do so, Defendants have deprived and will continue to deprive Plaintiffs of rights, privileges, or immunities secured by the Constitution and laws.

48.     As a consequence, the Regulations should be declared null and void from their inception, and Defendants should be enjoined from enforcing or regulating such provisions and causing irreparable harm. Pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to recover the fees and costs incurred in obtaining redress for Defendants' conduct.

### CLAIM IV

**Declaration that the Amendment and Regulations Violate
Due Process Protected by the Fifth and Fourteenth Amendments
to the U.S. Constitution and Nevada Constitution**

49.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-48 of this Complaint.

50.     The Regulations do not give fair notice to a person of ordinary intelligence to understand what conduct is required or prohibited.

51.     The Regulations lack specific standards, thereby encouraging, authorizing, or even failing to prevent arbitrary and discriminatory enforcement.

52.     Notwithstanding these deficiencies, the Labor Commissioner is enforcing the Regulations, including the Regulations concerning health benefits, against employers in Nevada. Furthermore, and based on the Labor Commissioner's regulations, employers, including Plaintiffs are being subjected to lawsuits for the violation of regulations that do not give employers fair notice of what is required or prohibited and regulations that lack specific standards.

53.     The Regulations, therefore, are impermissibly vague and violate the Due Process Clause of the Nevada Constitution and the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1.     That the Court construe the Minimum Wage Amendment and Regulations and enter a declaratory judgment stating that these laws are invalid because they are preempted by ERISA;

2.     That the Court construe the Regulations and Minimum Wage Amendment and enter a declaratory judgment stating that these laws are invalid because they impose an excessive burden on interstate commerce in violation of the U.S. Constitution;

3.     That the Court construe the Regulations and enter a declaratory judgment stating that these laws are void because, due to their vagueness, they violate due process protected by the Fifth and Fourteenth Amendments to the U.S. Constitution and Nevada Constitution;

4.     That the Court construe the Regulations and enter a declaratory judgment stating that these laws are invalid because the Office of the Labor Commissioner has exceeded its statutory authority in promulgating the Regulations;

5.      For preliminary and permanent injunctive relief, enjoining the enforcement, whether private or public, of Minimum Wage Amendment and the Regulations;

6.      For attorneys' fees and cost of suit; and

7.      For such other relief as the Court may deem just and proper.

Dated this 19th day of June, 2015.

JACKSON LEWIS P.C.

_____/s/ Elayna J. Youchah_____
Elayna J. Youchah, NV Bar No. 5837
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

Rene E. Thorne,* LA Bar No. 22875
650 Poydras Street, Suite 1900
New Orleans, Louisiana 70130
*Pro Hac Vice Application Pending

Attorneys for Plaintiffs