Elayna J. Youchah, NV Bar No. 5837
youchahe@jacksonlewis.com
Phillip C. Thompson, NV Bar No. 12114
phillip.thompson@jacksonlewis.com
**JACKSON LEWIS P.C.**
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

René E. Thorne, LA Bar No.22875
thorner@jacksonlewis.com
**JACKSON LEWIS P.C.**
650 Poydras Street, Suite 1900
New Orleans, Louisiana 70130
Tel: (504) 208-1755
Fax: (504) 208-1759
*Admitted Pro Hac Vice*
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LANDRY'S, INC., a Delaware corporation; CLAIM JUMPER ACQUISITION COMPANY, LLC, a Nevada limited liability company; BUBBA GUMP SHRIMP CO. RESTAURANTS, INC., a Delaware corporation; NEVADA RESTAURANT SERVICES, INC. d/b/a DOTTY'S GAMING AND SPIRITS, a Nevada corporation; NEVADA RESTAURANT SERVICES, INC. d/b/a LAUGHLIN RIVER LODGE, a Nevada corporation; NEVADA RESTAURANT SERVICES, INC. d/b/a HOOVER DAM LODGE, a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN SANDOVAL, in his official capacity as Governor of the State of Nevada; SHANNON CHAMBERS, in her official capacity as Labor Commissioner of the State of Nevada, AMY L. PARKS, in her official capacity as Acting Insurance Commissioner of the State of Nevada,<br><br>Defendants. | Case No. 2:15-cv-01160-GMN-PAL<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF** |

Plaintiffs, Landry's, Inc.; Bubba Gump Restaurants, Inc.; Claim Jumper Acquisition Company, LLC; Nevada Restaurant Services, Inc. d/b/a Dotty's Gaming and Spirits; Nevada Restaurant Services, Inc. d/b/a Laughlin River Lodge; and Nevada Restaurant Services, Inc. d/b/a Hoover Dam Lodge (collectively, "Plaintiffs") allege as follows:

## INTRODUCTION

1. This action involves a challenge to Nevada's Minimum Wage Amendment, found in Article 15, Section 16 of the Constitution of the State of Nevada ("Minimum Wage Amendment" or "Amendment") and the implementing regulations found in NAC Chapter 608.100 – 608.108 (the "Regulations"). As set forth below, the Employee Retirement Income Security Act of 1974 ("ERISA") preempts the voter-passed Minimum Wage Amendment and Regulations. In addition, the Minimum Wage Amendment and Regulations are unconstitutional under the commerce clause of Article I, Section 8 of the Constitution of the United States, the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, and the Constitution of the State of Nevada.

2. For these reasons, Plaintiffs ask the Court to preliminarily and permanently enjoin all enforcement of the Minimum Wage Amendment, and Regulations and declare the Minimum Wage Amendment and Regulations to be preempted under ERISA and in violation of the Constitution of the United States.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to the federal question statute, 28 U.S.C. § 1331, because this is a civil action arising under the Constitution and laws of the United States. More specifically, Plaintiffs bring this action because ERISA, 29 U.S.C. §§ 1001-1461, as amended, preempts Nevada's Minimum Wage Amendment and Regulations. Thus, jurisdiction is also proper under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). Furthermore, Plaintiffs bring this suit under 42 U.S.C. § 1983, which provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. The Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3). Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiffs' claims arising under

the laws of the State of Nevada because those claims are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy for purposes of Article III of the U.S. Constitution. In addition, the Court may grant declaratory and related relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) because the Defendants are located in this District, private property affected by the Ordinance is situated in this District, and the events giving rise to Plaintiffs' claims occurred in this District. Venue in the U.S. District Court for the District of Nevada is also proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## THE PARTIES

5. Landry's, Inc. ("Landry's") is a privately owned, multi-brand dining, hospitality, entertainment and gaming corporation incorporated in Delaware. Landry's owns and operates more than 500 restaurant and entertainment destinations in 35 states and the District of Columbia, including multiple locations in Nevada.

6. Claim Jumper Acquisition Company, LLC ("Claim Jumper") is a domestic limited liability company which owns and operates six restaurants in Nevada.

7. Bubba Gump Shrimp Co. Restaurants, Inc. ("Bubba Gump"), a Delaware corporation, operates forty-three Bubba Gump Shrimp Co. restaurants worldwide, including twenty-nine restaurants in the United States. Bubba Gump registered to do business in Nevada on June 14, 2012, and began operating its first restaurant in Nevada on December 15, 2012.

8. Nevada Restaurant Services, Inc. d/b/a Dotty's Gaming and Spirits ("Dotty's") is a Nevada corporation which owns and operates more than 100 taverns within the state.

9. Nevada Restaurant Services, Inc. d/b/a Laughlin River Lodge ("Laughlin River Lodge") is a Nevada corporation which purchased and began operating a hotel-casino in Laughlin, Nevada in September 2014.

10. Nevada Restaurant Services, Inc. d/b/a Hoover Dam Lodge ("Hoover Dam Lodge") is a Nevada corporation which purchased and began operating a hotel-casino in Boulder City, Nevada in December 2013.

11. As employers in Nevada, Plaintiffs are subject to the Minimum Wage Amendment and its Regulations. Plaintiffs are further subject to ERISA. In 2014 and 2015, Plaintiffs Landry's, Claim Jumper, Bubba Gump, and Dotty's were sued for alleged violations of the health benefits provisions in the Minimum Wage Amendment and Regulations even though these Plaintiffs offered health benefits plans to their employees. Such putative class-action lawsuits have become increasingly common, as at least 11 lawsuits have been filed in Nevada in the last 18 months.[1]

12. Defendant Brian Sandoval is the Governor of the State of Nevada. In his official capacity, the Governor is the chief executive officer of Nevada. He must ensure that the laws of the State are properly enforced.

13. Defendant Shannon Chambers is the Labor Commissioner of the State of Nevada. In her official capacity, the Labor Commissioner is responsible for, among other things, enforcing and regulating the State's labor laws. The Labor Commissioner has promulgated the Regulations and investigated wage claims based on the Minimum Wage Amendment and Regulations relating to health benefits. As recently as April 2015, the Labor Commissioner has enforced the Minimum Wage Amendment and Regulations in a manner that violates federal and Nevada law.

14. Defendant Amy L. Parks is the Acting Insurance Commissioner of the State of Nevada. In her official capacity, the Insurance Commissioner is responsible for, among other things, enforcing and regulating the State's insurance laws. The Office of the Labor Commissioner relies on the Nevada Division of Insurance to determine whether an insurance plan offered by an employer qualifies as an actual health insurance plan under the two-tier minimum wage system established by the Minimum Wage Amendment.

---

[1] *Diaz v. MDC Restaurants, LLC*, Eighth Judicial District Court, Clark County, Nevada, A-701633; *McLaughlin v. Deli Planet, Inc.*, Eighth Judicial District Court, Clark County, Nevada, A-703656; *Gemma v. Boyd Gaming Corp.*, Eighth Judicial District Court, Clark County, Nevada, A-703790; *Williams v. Claim Jumper Acquisition Co., LLC*, Eighth Judicial District Court, Clark County, Nevada, A-702048; *Perry v. Terrible Herbst, Inc.*, Eighth Judicial District Court, Clark County, Nevada, A-704428; *Lopez v. Landry's Inc.*, Eighth Judicial District Court, Clark County, Nevada, A-706449; *Perera v. Western Cab Co.*, Eighth Judicial District Court, Clark County, Nevada, A-707425; *Tyus v. Wendy's of Las Vegas, Inc.*, U.S. District Court for the District of Nevada, 2:14-cv-729-GMN-VCF; *Hanks v. Briad Restaurant Group, LLC*, U.S. District Court for the District of Nevada, 2:14-cv-786-GMN-PAL.

# **FACTS**

15. Pursuant to NRS 232, the Governor may appoint a Director of the Department of Business and Industry. The Director of the Department of Business and Industry "serves at the pleasure of the Governor." NRS 232.515. Under NRS 607.020, the Director of the Department of Business and Industry appoints Nevada's Labor Commissioner as the head of the Office of Labor Commissioner. The Labor Commissioner, pursuant to NRS 607.160, is vested with authority to enforce Nevada's labor laws and adopt regulations to carry out those laws.

16. Under NRS 608.250, and prior to November 2006, the Labor Commissioner was authorized to "establish by regulation the minimum wage" and "prescribe increases in the minimum wage in accordance with those prescribed by federal law, unless the Labor Commissioner determine[d] that those increases [we]re contrary to the public interest." Neither NRS 608.250 nor any other labor law required or authorized the Labor Commissioner to regulate or otherwise enforce employer-provided health benefits.

17. Nevada's 2004 general election presented Nevadans with a ballot initiative known as "Question 6" or "Raise the Minimum Wage for Working Nevadans." Among other things, Question 6 sought to amend Nevada's Constitution to include a two-tiered minimum wage, the rates of which would deviate from the federal minimum wage based on cost of living increases. The specific question on the ballot posed to voters stated, "Shall the Nevada Constitution be amended to raise the minimum wage paid to employees?".[2] The voters approved Question 6.

18. Question 6, however, went far beyond simply raising the minimum wage and altering the manner in which the minimum wage would be calculated. Indeed, the proposed amendment's terms introduced a "health benefits" component that would dictate the type of health plan an employer would be required to offer to its employees.

---

[2] Although not included on the ballot, the voter's guide provided the following explanation: "The proposed amendment, if passed, would create a new section to Article 15 of the Nevada Constitution. The amendment would require employers to pay Nevada employees $5.15 per hour worked if the employer provides health benefits, or $6.15 per hour worked if the employer does not provide health benefits. The rates shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living measured by the Consumer Price Index (CPI), with no CPI adjustment for any one-year period greater than 3%." *Nevada Legislative Counsel Bureau – Research Division*.

19. Pursuant to Nevada law, voters must approve a proposed constitutional amendment in two consecutive general elections. Accordingly, Question 6 was again proposed to Nevada's voters in the 2006 general election. Once again, the description appearing on the ballot stated, "Shall the Nevada Constitution be amended to raise the minimum wage paid to employees?". And once again, Nevada's voters approved Question 6.

20. On November 28, 2006, the Minimum Wage Amendment became effective and was codified as Article XV, Section 16 to the Nevada Constitution. As codified in the Constitution, the Minimum Wage Amendment is entitled "Payment of minimum compensation to employees" and states, in relevant part:

> A. Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living. The cost of living increase shall be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%. The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1 . . . Tips or gratuities received by employees shall not be credited as being any part of or offset against the wage rates required by this section.
>
> B. The provisions of this section may not be waived by agreement between an individual employee and an employer. All of the provisions of this section, or any part hereof, may be waived in a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in such agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute, or be permitted, as a waiver of all or any part of the provisions of this section. An employer shall not discharge, reduce the compensation of or otherwise discriminate against any employee for using any civil remedies to enforce this section or otherwise asserting his or her rights under this section. An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to

remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs.

21. As is apparent from the Amendment's text, there is virtually no guidance regarding "health benefits." In fact, the Amendment's only description of "health benefits" states: "Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Art. 15, § 16(A).

22. Moreover, the Amendment does not authorize the legislature, the Governor, the Labor Commissioner, the Insurance Commissioner or any other person or agency to promulgate regulations or enforce its provisions. Rather, it merely states, "The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates," and that the "bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive such notice." Art. 15, § 16(A). The only language speaking to how the provisions may be enforced reads: "An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section[.]" Art. 15, § (B).

23. Therefore, beyond announcing and publishing the new rates, the Minimum Wage Amendment does not authorize the Governor, Labor Commissioner, the Insurance Commissioner, or any other agency or officer, to establish or enforce corresponding regulations.

24. Upon information and belief, the Governor has not designated a state agency to publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1, as allowed by the Amendment.

25. Shortly after the Amendment became effective, however, Nevada's Labor Commissioner began issuing regulations. The permanent implementing regulations are found in NAC 608.100 through 608.108.

26. Through NAC 608.102, the Labor Commissioner adopted a regulation that dictates the type of health care an employer must offer to "qualify to pay an employee" the lower tier minimum wage rate. Specifically, NAC 608.102 states that the health plan must include "those categories of health care expenses that are generally deductible by an employee on his individual federal income tax return pursuant to 26 U.S.C. § 213 and any federal regulations relating thereto, if such expenses had been borne directly by the employee" or provide benefits under the Taft-Hartley trust formed pursuant to 29 U.S.C. § 186(c)(5) and which qualifies as a "welfare benefit plan" under IRS guidelines or ERISA. Moreover, the health plan "must be made available to the employee and any dependents," subject to a six-month waiting period, and at a rate where the employee's cost is no more than "10 percent of the gross taxable income of the employee attributable to the employer under the Internal Revenue Code," further referencing NAC 608.104.

27. In turn, NAC 608.104 purports to establish "qualified health insurance," a concept without a basis in the Minimum Wage Amendment. This Regulation further dictates how the 10 percent figure of NAC 608.102 and Article 15, § 16(A) is calculated.

28. The Office of the Labor Commissioner is enforcing the Amendment, determining whether employers are in compliance with the Amendment and the Regulations, issuing Determinations of Wage Claims pursuant to the Regulations, and relying upon the Nevada Division of Insurance to determine whether an insurance plan offered by an employer qualifies as an actual health insurance plan under the two-tier minimum wage system established by the Minimum Wage Amendment.

29. The Division of Insurance is not authorized, expressly or impliedly, to issue regulations, provide guidance, or to otherwise take any act for the purpose of implementing or enforcing the Amendment.

30. Under NAC 608.106, the employer is required to retain documentation when an employee declines coverage. Referencing the Minimum Wage Amendment, NRS 607.160 and 608.250 (the minimum wage statute), NAC 608.108 provides that an employer that "does not offer a health insurance plan" as prescribed in NAC 608.102, or it is not made available to the

employee "within 6 months of employment," then the employee is to receive the upper-tier minimum wage rate "until such time as the employee becomes eligible for and is offered coverage" under a plan that satisfies NAC 608.102's requirements.

## CLAIMS FOR RELIEF

## CLAIM I

### Declaration that ERISA Preempts the Amendment and Regulations

31.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-30 of this Complaint.

32.     ERISA is a federal law concerning private employer sponsored pensions and health plans.  ERISA has broad preemptive force on state law and regulation of employee benefits.  The primary objective of ERISA is to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91 (1983).

33.     To accomplish this objective, Section 514(a) of ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  This preemption provision aims "to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government" and to reduce "the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).

34.     A state law "relates to" an ERISA plan "if it has a *connection with* or *reference to* such a plan." *Shaw*, 463 U.S. at 97 (emphasis added).  To make this determination, courts must look "to the objectives of the ERISA statute" as well as "to the nature of the effect of the state law on ERISA plans[.]" *California Div. of Labor Standards Enforcement v. Dillingham Constr*., 519 U.S. 316, 325, (1997).   State laws that "mandate employee benefit structures or their administration" are preempted by ERISA. *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 658 (1995).  Such state-imposed regulation of an

employer's provision of employee benefits conflicts with ERISA's goal of establishing uniform, nationwide regulation of employee benefit plans. *Id.* at 657-58. Thus, courts have readily and routinely found preemption of state laws that act directly upon an employee benefit plan or effectively require it to establish a particular ERISA-governed benefit.

35. Here, beyond altering the subject of minimum wage law in Nevada, the Amendment and Regulations radically impacted and altered health benefits offered by Nevada's private employers, such as the Plaintiffs in this matter. In doing so, the Minimum Wage Amendment and implementing regulations unlawfully encroach on employee benefits plans, which fall under ERISA's purview. The Amendment and Regulations, therefore, subject employers to uncertainty and additional costs, seek to substantively change health benefits, create inconsistent and undecipherable health benefits standards, and otherwise frustrate ERISA's purpose of establishing a uniform, nationwide regulation of employee benefit plans.

36. The Minimum Wage Amendment relates to employee benefits plans because it dictates that, "Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." Art. 15, § 16(A).

37. The Regulations relate to, and have a connection with, employee benefit plans because NAC Chapter 608.100 – 608.108 dictates requirements for "qualified" health plans. Specifically, the Regulations (1) mandate the provision of benefits ("if employer does not offer a health insurance plan . . . the employee must be paid [the higher wage set forth in NAC608.100(b)])"); (2) regulate the premium amount that can be charged to employee (limited to 10% of gross taxable income and has to be calculated on an annual, per employee basis); and (3) mandate the scope of coverage that must be offered ("to qualify to pay an employee the minimum wage set forth in [NAC 608.100(a)], an employer must . . . offer a health insurance plan which . . . covers those categories of health care expenses that are generally deductible by an employee . . . pursuant to 26 U.S.C. § 21[.]").

38. The Regulations also impermissibly impose reporting requirements on health benefits plans through the employer-plan sponsors not required by ERISA. Specifically, under NAC 608.106, "[i]f an employee declines coverage under a health insurance plan that meets the requirements of NAC 608.102 and which is offered by the employer, the employer must maintain documentation that the employee has declined coverage."

39. In addition, the Regulations conflict with and are preempted by ERISA because they frustrate ERISA's objective of uniform plan administration. The Regulations impose on employers with operations in Nevada different health care obligations and reporting requirements than in other states. An employer with employees in Nevada and elsewhere must offer its Nevada employees a "qualified" plan or else it will receive disfavorable treatment under the Regulations. Today, for example, such an employer cannot offer a single ERISA and Affordable Care Act-compliant plan to all of its employees without being penalized by the State of Nevada. Thus, the Amendment and the Regulations illegally compel employers to change the administration of their ERISA-governed plans, and/or to create separate and independent plans for Nevada employees.

40. In sum, the Amendment and the Regulations relate to, have a connection with and directly regulate employers' provision of healthcare benefits. As a consequence, ERISA preempts the Amendment and Regulations.

## CLAIM II

### Declaration that the Amendment and Regulations Violate the U.S. Constitution's Commerce Clause

41. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-40 of this Complaint.

42. The Commerce Clause of the U.S. Constitution provides, "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8, cl 3. That affirmative grant of power to Congress also limits the power of state and local governments to pass legislation affecting interstate commerce (the "Dormant Commerce Clause").

43. The Dormant Commerce Clause prohibits state laws that impose an excessive burden on interstate commerce.

44. The Minimum Wage Amendment and Regulations impose an excessive burden on interstate commerce. They prevent entities operating in multiple states and moving goods and services into and out of Nevada from maintaining uniform employee benefits provisions consistent with ERISA and the Affordable Care Act.

45. The Minimum Wage Amendment and Regulations require national entities to develop unique benefit plans exclusively for their Nevada locations and employees which impose costs and other burdens far in excess of those imposed by other states and the federal government. These costs and burdens deter entities from conducting commerce in or through Nevada.

## CLAIM III

**Declaration that the Governor's Delegation of Authority
to Promulgate the Regulations and Enforce the Regulations
and Amendment Violates the United States and Nevada Constitutions**

46. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-45 of this Complaint.

47. The Fourteenth Amendment to the Constitution of the United States establishes that States may not "deprive any person of life, liberty, or property, without due process of law." Similarly, Article 1, Section 8, Clause 5 of the Constitution of the State of Nevada provides, "No person shall be deprived of life, liberty, or property, without due process of law."

48. Pursuant to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

49. In Nevada, the Governor appoints a Director as the head of the Department of Business and Industry. The Director of the Department of Business appoints a Labor Commissioner and an Insurance Commissioner. As an officer of Nevada's Executive Department, the Labor Commissioner is generally authorized to enforce Nevada's "labor laws"

1  and, to the extent properly delegated, adopt regulations in furtherance of enforcing those labor
2  laws.  NRS 607.160.  The Insurance Commissioner is responsible for the administration of the
3  provisions of NRS Title 57, "Insurance."  NRS 232.825.

4      50.    The Minimum Wage Amendment makes a specific and limited grant of authority to the Governor stating only: [t]he Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1."  This is the only aspect of the law that anticipates subsequent state action.  *Id.*

9      51.    Upon information and belief, the Governor has approved the Regulations.

10      52.    The only delegation authority provided to the Governor under the Amendment is for the limited purpose of designating a state agency to publish a bulletin announcing adjusted minimum wage rates.  Upon information and belief, the Governor has exceeded this authority by delegating functions of rule-making and enforcement to the Labor Commissioner and Insurance Commissioner.

15      53.    To the extent the Governor has delegated formally or informally, authority (a) to the Labor Commissioner to promulgate regulations and enforce the Amendment, and (b) to the Insurance Commissioner the authority enforcing the Regulations though interpretative acts which are unknown to the public, when not authorized to do so, the Governor has deprived and will continue to deprive Plaintiffs of rights, privileges, or immunities secured by the Constitution and laws.

21      54.    As a consequence, the Regulations should be declared null and void from their inception, and the Governor should be enjoined from enforcing or regulating such provisions and causing irreparable harm.  Pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to recover the fees and costs incurred in obtaining redress for the Governor's conduct.

JACKSON LEWIS P.C.
LAS VEGAS

# CLAIM IV

### Declaration that the Regulations Are Unconstitutional Because They Exceed the Labor Commissioner's and the Insurance Commissioner's Authority

55. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-54 of this Complaint.

56. The Fourteenth Amendment to the Constitution of the United States establishes that States may not "deprive any person of life, liberty, or property, without due process of law." Similarly, Article 1, Section 8, Clause 5 of the Constitution of the State of Nevada provides, "No person shall be deprived of life, liberty, or property, without due process of law."

57. Pursuant to 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

58. In Nevada, the Governor appoints a Director as the head of the Department of Business and Industry. The Director of the Department of Business and Industry appoints a Labor Commissioner and an Insurance Commissioner. As an officer of Nevada's Executive Department, the Labor Commissioner is generally authorized to enforce Nevada's "labor laws" and, to the extent properly delegated, adopt regulations in furtherance of enforcing those labor laws. NRS 607.160. The Insurance Commissioner is responsible for the administration of the provisions of NRS Title 57, "Insurance." NRS 232.825.

59. The Minimum Wage Amendment provides that the applicable minimum wage depends on whether the "employer provides health benefits." Art. 15, § 16(A). "Offering health benefits" under the Amendment "consist[s] of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer." *Id.*

60. The Amendment does not authorize any person or entity to enforce, administer or regulate its provisions. *Id.* Indeed, the Minimum Wage Amendment's provision that "[t]he Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1" is the only aspect of the law that anticipates subsequent state action. *Id.*

61. Neither Nevada's voters, nor the Legislature, nor the Governor, to the extent he could exercise this power, have delegated to the Labor Commissioner or Insurance Commissioner authority to enforce or regulate the Minimum Wage Amendment's provisions.

62. Moreover, the Insurance Commissioner evaluates health benefits offered by private employers without providing any notice or publishing any standards against which it makes its determination.

63. The Labor Commissioner and Insurance Commissioner are "persons" acting under the color of law. By promulgating and enforcing the Regulations, when not authorized to do so, The Insurance Commissioner and Labor Commissioner have deprived and will continue to deprive Plaintiffs of rights, privileges, or immunities secured by the Constitution and laws.

64. As a consequence, the Regulations should be declared null and void from their inception, and the Labor Commissioner and Insurance Commissioner should be enjoined from enforcing or regulating such provisions and causing irreparable harm. Pursuant to 42 U.S.C. § 1988, Plaintiffs are also entitled to recover the fees and costs incurred in obtaining redress for the Labor Commissioner's and Insurance Commissioner's conduct.

## CLAIM V

**Declaration that the Amendment and Regulations Violate Due Process Protected by the Fifth and Fourteenth Amendments to the U.S. Constitution and Nevada Constitution**

65. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-64 of this Complaint.

66. The Regulations do not give fair notice to a person of ordinary intelligence to understand what conduct is required or prohibited.

67. The Regulations lack specific standards, thereby encouraging, authorizing, or even failing to prevent arbitrary and discriminatory enforcement.

68. Notwithstanding these deficiencies, the Labor Commissioner is enforcing the Regulations against employers in Nevada.

69. The Insurance Commissioner is engaged in ad hoc rule making and/or enforcement of the Amendment, in excess of any authority granted under the Amendment, by evaluating the sufficiency of employer-offered health benefits under the Amendment and advising the Labor Commissioner as to whether an employer's plan meets the requirements of the Labor Commissioner's regulations which are unconstitutional.

70. Furthermore, and based on the Labor Commissioner's regulations, employers, including Plaintiffs, are being subjected to lawsuits for the violation of regulations that do not give employers fair notice of what is required or prohibited and which lack specific standards.

71. The Regulations, therefore, are impermissibly vague and violate the Due Process Clause of the Nevada Constitution and the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. That the Court construe the Minimum Wage Amendment and Regulations and enter a declaratory judgment stating that these laws are invalid because they are preempted by ERISA;

2. That the Court construe the Regulations and Minimum Wage Amendment and enter a declaratory judgment stating that these laws are invalid because they impose an excessive burden on interstate commerce in violation of the U.S. Constitution;

3. That the Court construe the Regulations and enter a declaratory judgment stating that these laws are void because, due to their vagueness, they violate due process protected by the Fifth and Fourteenth Amendments to the U.S. Constitution and Nevada Constitution;

4. That the Court construe the Regulations and enter a declaratory judgment stating that these laws are invalid because the Office of the Labor Commissioner has exceeded its statutory authority in promulgating the Regulations;

5. For preliminary and permanent injunctive relief, enjoining the enforcement, whether private or public, of Minimum Wage Amendment and the Regulations;

6. For attorneys' fees and cost of suit; and

7. For such other relief as the Court may deem just and proper.

Dated this 15th day of July, 2015.

                                        JACKSON LEWIS P.C.

                                        /s/ Elayna J. Youchah
                                    Elayna J. Youchah, NV Bar No. 5837
                                    Phillip C. Thompson, NV Bar No. 12114
                                    3800 Howard Hughes Parkway, Suite 600
                                    Las Vegas, Nevada 89169

                                    René E. Thorne, LA Bar No. 22875
                                    650 Poydras Street, Suite 1900
                                    New Orleans, Louisiana 70130
                                    *Admitted Pro Hac Vice*

                                    *Attorneys for Plaintiffs*

JACKSON LEWIS P.C.
LAS VEGAS

-17-