1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LANDRY'S, INC. *et al.*,                )
                                         )
             Plaintiffs,                 )        Case No.: 2:15-cv-1160-GMN-PAL
        vs.                              )
                                         )        **ORDER**
BRIAN SANDOVAL *et al.*,                 )
                                         )
             Defendants.                 )
_____ )

        Pending before the Court are three Motions to Dismiss Plaintiffs Landry's, Inc.; Bubba

Gump Restaurants, Inc.; Claim Jumper Acquisition Company, LLC's (collectively,

"Plaintiffs'") Second Amended Complaint ("SAC").  The first Motion to Dismiss was filed by

Defendants Governor Brian Sandoval ("Governor" or "Sandoval") and Labor Commissioner

Shannon Chambers ("Labor Commissioner" or "Chambers"), and the second was filed by

Defendant Nevada Insurance Commissioner Barbara Richardson ("Insurance Commissioner"

or "Richardson")[1] (collectively, "Defendants").  (ECF Nos. 54, 55).  Intervenor Nevada State

Federation of Labor, AFL-CIO ("Intervenor") filed the third Motion to Dismiss.  (ECF No. 76).

All three motions are fully briefed.

## I.    BACKGROUND

        This case arises as a challenge to the Nevada Minimum Wage Amendment, Article 15,

Section 16 of the Nevada Constitution ("Minimum Wage Amendment" or "MWA") and its

---

[1] Originally, Amy L. Parks was the party to this suit in her official capacity as Acting Insurance Commissioner.
However, upon the appointment of Richardson as Nevada Insurance Commissioner, she was automatically
substituted for Parks under Federal Rule of Civil Procedure ("FRCP") 25(d).  (*See* Richardson Mot. to Dismiss
("MTD") 2 n.1, ECF No. 55).  Accordingly, the Clerk of the Court shall substitute Barbara Richardson for Amy
L. Parks.
        Further, Richardson's Motion to Dismiss also joined and concurred with Sandoval and Chambers'
Motion to Dismiss. (Richardson MTD 2:7–10).

related Regulations, Nevada Administrative Code ("NAC") Chapter 608.100–108 (the "Regulations"). (SAC ¶ 1, ECF No. 50).  The Minimum Wage Amendment was a ballot initiative enacted after voter approval in two general elections, 2004 and 2006. (*Id.* ¶ 22–25).

Plaintiffs' SAC focuses on the following language from the MWA:

> The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer.

Nev. Const. art. 15, § 16(A).  From the MWA, Plaintiffs allege that "Nevada's Labor Commissioner began issuing regulations . . . found in NAC 608.100 through 608.108." (SAC ¶ 29).  These Regulations include further specification regarding the health benefits that qualify under the Nevada Wage Amendment. (*Id.* ¶¶ 30–32).  Plaintiffs also allege that the Labor Commissioner enforces the Amendment while relying on the "Nevada Division of Insurance to determine whether an insurance plan offered by an employer 'qualifies' as a health insurance [plan] under the two-tier minimum wage system established by the Minimum Wage Amendment." (*Id.* ¶ 35).

On June 19, 2015, Plaintiffs filed their Complaint in this Court, which they amended as a matter of course on July 15, 2015. (ECF Nos. 1, 17).  Defendants filed two Motions to Dismiss (ECF Nos. 25, 27) asserting, *inter alia*, that Plaintiffs lacked standing.  On March 31, 2016, the Court granted Defendants' Motions, explaining that Plaintiffs' allegations regarding pending lawsuits were not sufficient to establish concrete injury, as required under standing doctrine. (Order 6:1–21, ECF No. 47).  The Court then allowed Plaintiff leave to file a SAC. (*Id.* 6:22–7:1).  Plaintiffs timely filed their SAC, which alleges four causes of action: (1) Declaration that ERISA Preempts the Amendment and Regulations, under ERISA

§ 502(A)(3); (2) "Declaration Pursuant to 42 U.S.C. § 1983 that the Governor's Delegation of Authority to Promulgate the Regulations and Enforce the Regulations and Amendment Deprives Plaintiffs of Rights Secured by the Due Process Clause of the United States Constitution"; (3) "Declaration Pursuant to 42 U.S.C. § 1983 that the Regulations Are Unconstitutional Because They Exceed the Labor Commissioner's and the Insurance Commissioner's Authority and Thus Violate Plaintiffs' Right to Due Process Under the United States Constitution"; and (4) "Declaration Pursuant to Pursuant to 42 U.S.C. § 1983 that the Amendment and Regulations Violate Due Process Protected by the Fifth and Fourteenth Amendments to the United States Constitution." (SAC ¶¶ 52–104, ECF No. 50).  On May 31, 2016, Defendants brought their Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 54, 55).

On August 16, 2016, the Court granted Intervenor's Motion to Intervene. (ECF No. 79). The next day, Intervenor filed its Motion to Dismiss (ECF No. 76), along with its Complaint against Plaintiffs (ECF No. 77).

## II.  <u>LEGAL STANDARD</u>

### A. 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits motions to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  When subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists").  Accordingly, courts will presume a lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A motion to dismiss under Rule 12(b)(1) may be construed in one of two ways. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  It may be described as "facial," meaning that it attacks the sufficiency of the allegations to support subject matter jurisdiction. *Id.*  Alternatively, it may be described as "factual," meaning that it "attack[s] the existence of subject matter jurisdiction in fact." *Id.*

When, as here, a court considers a 'facial' attack made pursuant to Rule 12(b)(1), it must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

**B.  12(b)(6)**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).  "However, material which is properly submitted as part of the

complaint may be considered." *Id.*   Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *E.g.*, *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1123–24 (9th Cir. 2002).   On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).   Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).   Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

In the instant Motions to Dismiss, Defendants seek to dismiss Plaintiffs' claims for lack of standing, along with being barred by the Eleventh Amendment, legislative immunity, or statute of limitations, and failure to state a claim.

### A. Standing

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   As such, to survive a

motion to dismiss, a plaintiff bears the burden of alleging sufficient facts to show the existence of each of three elements. *Id.*

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (internal quotation marks and citations omitted).  The Supreme Court recently further explained the terms particularized and concrete: "Particularized" means the injury "must affect the plaintiff in a personal and individual way," while "concrete" means "it must actually exist[;] . . . 'real' and not 'abstract.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

When analyzing a motion to dismiss for lack of standing, courts must accept the allegations in the complaint as true and construe the complaint in favor of the complaining party. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).  Indeed, at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" because on a motion to dismiss, courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (citing *Lujan*, 504 U.S. at 561).  While the Ninth Circuit in *Maya* differentiated between the standard for dismissal due to standing compared with a 12(b)(6) dismissal under the standards of *Twombly* and *Iqbal*, the Court nonetheless clarified: "This is not to say that [a] plaintiff may rely on a bare legal conclusion to assert injury-in-fact." *Id.*

Plaintiffs' SAC asserts the following injury:

> (1) increased administrative costs of offering a separate health insurance plan in Nevada apart from the ERISA-governed, Affordable Healthcare Act ("ACA") compliant plan they offer nationally, (2) paying $8.25 per hour to their employees

rather than the $7.25 otherwise required, and (3) harm to their reputation and business goodwill in the eyes of their employees and the public based on their inability to comply with the vague, unconstitutional laws.

(SAC ¶ 5).  Plaintiffs explain that their injury stems from "a false choice imposed by the preempted and unconstitutionally adopted Amendment and Regulations . . . between incurring certain liability and sanctions under these challenged laws or paying $1.00 more to each minimum wage earner in Nevada." (*Id.* ¶¶ 45, 51).  Defendants argue that the SAC "suffers from the same fatal flaws as the First Amended Complaint . . . [and] Plaintiffs have alleged no new facts demonstrating standing." (Sandoval-Chambers MTD 2:13, 5:27, ECF No. 54).

The Court finds that Plaintiffs' alleged increased administrative costs are sufficient to confer standing.  Plaintiffs assert that they "must alter their ERISA-governed health plans and the administration of those plans in Nevada to comply with state law." (SAC ¶ 48).  Then, "[t]his alteration causes (1) an increase in administrative costs and (2) an increase in the cost of funding separate healthcare plans in Nevada that impose more stringent requirements and cost more than the ERISA-governed, ACA-compliant plans Plaintiffs offer nationally." (*Id.*).  None of the three motions to dismiss address Plaintiffs' injury of increased administrative costs.  Accepted as true and construed in favor of Plaintiffs, Plaintiffs are personally suffering an added cost.  Such an alleged cost is real, not abstract.  As such, the Court finds that this injury is sufficiently particularized and concrete.  Further, the injury is causally connected and redressable by a favorable ruling from the Court because if the Court finds the MWA is preempted by ERISA, then Plaintiffs will no longer need to pay the alleged increased administrative costs to satisfy the MWA's allegedly more stringent requirements.  Accordingly, the Court finds that Plaintiffs have sufficiently asserted standing in their SAC.[2]

---

[2] Richardson argues that "Plaintiffs' failure to establish the causal connection between the injury they allege and the Insurance Commissioner is particularly conspicuous." (Richardson MTD 6:11–12).  However, the presence of one party with standing assures that the controversy before the Court is justiciable. *See Dep't of Commerce v.*

1

### B.  Eleventh Amendment

2

3       Defendants argue that Plaintiffs' suit is barred by the Eleventh Amendment. (Sandoval-

Chambers MTD 14:8–19); (Richardson MTD 7:22–8:10).  Further, they argue that the *Ex Parte*

4   *Young* exception is not applicable here. (Sandoval-Chambers MTD 14:20–16:28); (Richardson

5   MTD 8:11–10:4).

6       "The Eleventh Amendment bars a suit against state officials when the state is the real,

7   substantial party in interest." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101

8   (1984) (internal quotation marks omitted).  While a state may waive its immunity, Nevada has

9   explicitly refused to waive its immunity to suit under the Eleventh Amendment. Nev. Rev. Stat.

10  § 41.031(3); *O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982), *cert denied*, 459

11  U.S. 1071 (1982).  Thus, as a general rule, "relief sought nominally against an officer is in fact

12  against the sovereign if the decree would operate against the latter." *Id.* (internal quotation

13  marks omitted).  "And, as when the State itself is named as the defendant, a suit against state

14  officials that is in fact a suit against a State is barred regardless of whether it seeks damages or

15  injunctive relief." *Id.* at 101–02.

16      However, in *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court held that "a suit

17  challenging the constitutionality of a state official's action is not one against the State."

18  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.  In other words, the Eleventh Amendment

19  immunity doctrine does not bar suits "brought in federal court against state officials in their

20  official capacities for prospective injunctive relief to prevent future violations of federal law."

21  *Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253, 255 (8th Cir. 1995); *see also*

22  *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).  "[S]uch an officer must have some

23

24  *U.S. House of Representatives*, 525 U.S. 316, 330 (1999); *Director, Office of Workers' Compensation Programs*
    *v. Perini North River Assocs.*, 459 U.S. 297, 303–05 (1983).  Because the Court has found standing regarding
25  Plaintiffs' administrative costs, the Court need not examine standing in particular to Defendant Richardson.

connection with the enforcement of the [allegedly unconstitutional] act." *Ex Parte Young*, 209 U.S. at 157.  This connection with enforcement can be virtue of the official's office, and need not be "declared in the same act which is to be enforced." *Id.*  However, it "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Los Angeles Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citing *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992)).  *Ex Parte Young* dictates that "the officers of the state must be cloaked with a duty to enforce the laws of the state and must threaten or be about to commence civil or criminal proceedings to enforce an unconstitutional act." *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir. 1998)

The exception from *Ex Parte Young* does not apply to claims in which "state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 104.  As such, courts "must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.*

Defendants Sandoval and Chambers first argue that "Plaintiffs' second and third claims for relief which are based entirely upon whether the Governor or Labor Commissioner is authorized by state law to adopt the regulations in question" allege only state law violations. (Sandoval-Chambers MTD 15:17–19).  Defendants also contend that "Plaintiffs do not allege an action by any state official that could serve as the cardinal justification to strip a state official of the immunity guaranteed by the Eleventh Amendment." (*Id.* 16:11–13).  Moreover, Defendants argue that the alleged decision on unpaid wages (*see* SAC ¶ 86) was not an enforcement of the MWA in violation of federal law; rather, the decision merely implies that the "Labor Commissioner is requiring employers to pay the higher standard wage of $8.25 per

hour . . . [but] [e]nforcing state law requiring that an employer pay minimum wage is not in contradiction of federal law because it is expressly permitted by federal law." (*Id.* 16:20–26).

Defendant Richardson further emphasizes that as the Insurance Commissioner, she "has no power or connection to the enforcement of the challenged laws, much less any power to threaten or 'commence civil or criminal proceedings to enforce an unconstitutional act.'" (Richardson MTD 9:22–24). Richardson cites to *Snoeck*, stressing that the Ninth Circuit found if a state administrative entity has no enforcement power under Nevada law, then "it has no connection to the enforcement of the challenged law as required under *Ex Parte Young*." *Snoeck*, 153 F.3d at 987.[3] Defendant Sandoval also makes this same argument, claiming that as Governor, his connection to enforcement is solely "based upon his status as the chief executive of Nevada and the general duty of his office to enforce the laws of the state." (Sandoval-Chambers MTD 17:15–16). He argues that Nevada law specifically "charges the Labor Commissioner as the state official with the authority to enforce the commands of the minimum wage amendment." (*Id.* 17:21–24) (citing Nev. Rev. Stat. 607.160; Nev. Rev. Stat. 607.170; Nev. Rev. Stat. 608.270; Op. Nev. Att'y Gen. 2005-04 (March 2, 2005)).

Plaintiffs respond that each of their claims allege "a violation of a federal law only and each seek a prospective injunction prohibiting state officials from interfering with federally protected rights." (Pls.' Resp. 23:15–16, ECF No. 68). Plaintiffs examine each claim as to how it relates to federal law. Specifically, their second claim "seeks to enjoin the Governor who continues his delegation of authority to the Labor Commissioner to enforce the MWA through impermissibly adopted Regulations based on concepts not found in the MWA all in violation of Plaintiffs' rights arising out of the Due Process Clause of the U.S. Constitution." (*Id.* 23:19–23). Similarly, their third claim also asserts a constitutional due process issue based on the

---

[3] The *Snoeck* Court found this lack of enforcement was particularly important because a different entity was expressly charged with enforcement. *Id.* at 987.

Labor and Insurance Commissioners' alleged continuing "exercise [of] authority (including, in the case of the Labor Commissioner, the authority to bring criminal charges) granted only to the State's Judicial Branch." (*Id.* 24:1–6). Ultimately, Plaintiffs explain that, if successful, their suit will:

> enjoin the Governor's continued improper grant of authority to the Labor Commissioner to enforce the MWA through Regulations the Labor Commissioner has and had no authority to adopt or enforce, and will enjoin the Labor Commissioner from seeking ad hoc advice from the Insurance Commissioner who has no authority to interpret the MWA or language in the Regulations, all of which impedes, interfere with, and deprives Plaintiffs of federally protected rights.

(*Id.* 24:12–17). They assert that their claims are violations of federal law with only injunctive damages sought, so the *Ex Parte Young* exception applies, and the Eleventh Amendment does not bar the suit. (*Id.* 24:18–25:6).

Plaintiffs additionally argue that because "the Governor is the only government official mentioned anywhere in the MWA . . . [he] clearly has a connection with the law sufficient to be named a defendant." (*Id.* 17 n.19). They allege that he has "approved the Regulations" and "formally or informally" delegated "functions of rule-making and enforcement to the Labor Commissioner and Insurance Commissioner." (*Id.*) (citing SAC ¶ 70, 72).

The Court finds that the Labor Commissioner is the only proper party to this suit. Neither the Governor nor the Insurance Commissioner have any "connection to the enforcement" of challenged law. *Snoeck*, 153 F.3d at 987. The Governor's only role regarding the MWA is: "The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1." Nev. Const. art. 15, § 16(A). Merely publishing a bulletin hardly seems to be a connection to the enforcement of the MWA. Further, *Ex Parte Young* specifically explains that suit cannot be brought against a governor simply because "as the executive of the state, [he] was, in a general sense, charged with the execution of all its laws." *Ex Parte Young*, 209

U.S. at 157. *Ex Parte Young* rested on a legal fiction that a state official enforcing an unconstitutional law is no longer a representative of the state, removing his Eleventh Amendment immunity. *See Cardenas v. Anzai,* 311 F.3d 929, 935 (9th Cir. 2002). Without a particular connection to enforcement of the challenged act, this exception cannot apply as the state official simply becomes a representative of the state again, and the suit is barred by the Eleventh Amendment. Similarly, the Insurance Commissioner's alleged role as advisor to Labor Commissioner does not suffice as a connection to enforcement. Just as in *Snoeck*, where a non-party entity was expressly charged with enforcement, here, the Labor Commissioner is expressly charged with enforcement of all labor laws under NRS § 607.160. Accordingly, the Court finds that Sandoval and Richardson do not have a sufficient connection to enforcement, and Plaintiffs' suit as to these Defendants is barred by the Eleventh Amendment. Because claim two solely relates to Governor Sandoval's actions regarding the Regulations, the Court dismisses claim two with prejudice.

The inquiry does not conclude here, though, as the Labor Commissioner may only be sued under *Ex Parte Young* if the claims are violations of federal law, not state law. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 104. However, because Plaintiffs specifically bring their claims under ERISA and 42 U.S.C. § 1983 for violations of due process and equal protection, the Court finds that Plaintiffs have sufficiently alleged violations of federal law.

### C. Legislative Immunity

Next, Defendant[4] asserts, "To the extent that Plaintiffs' claims are based upon the adoption of the regulations, rather than specific adverse enforcement action, the claims are barred by the absolute privilege of legislative immunity." (MTD 19:11–13). The Court finds

---

[4] "Defendant" hereafter refers to Labor Commissioner Chambers, as she is the remaining Defendant. Similarly, "MTD" hereafter refers to what was previously called the "Sandoval-Chambers MTD." (*See* ECF No. 54).

that legislative immunity bars claim three that promulgating the Regulations exceeded the Labor Commissioner's authority.

Local government officials are entitled to legislative immunity for their legislative actions, whether those officials are members of the legislative or the executive branch. *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998). This immunity extends both to claims for damages and claims for injunctive relief. *Supreme Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732–33 (1980). Whether an act is legislative depends not on defined categories of government acts but on "the character and effect" of the particular act at issue. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984). Moreover, the question of the intent of the individual defendants is strictly off-limits in the legislative immunity analysis; as instructed by the Supreme Court, whether the officials' actions were legislative must be "stripped of all considerations of intent and motive." *Bogan,* 523 U.S. at 55; *see also Tenney v. Brandhove,* 341 U.S. 367, 377 (1951).

The Court considers four factors in determining whether an act is legislative in its character and effect: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003) (citation and internal quotation marks omitted). The first two factors are largely related, as are the last two factors, and they are not mutually exclusive. *Kaahumanu*, 315 F.3d at 1220; *San Pedro Hotel v. City of Los Angeles*, 159 F.3d 470, 476 (9th Cir. 1998).

Defendant argues that all four factors weigh in favor of granting the Labor Commissioner legislative immunity for promulgating the Regulations. (MTD 19:28–20:24). Plaintiffs respond that "legislative immunity does not apply when a state official acts in violation of the United States Constitution or federal law." (Pls.' Resp. 25:11–12). Essentially,

Plaintiffs contend that because the Labor Commissioner did not have authority under the MWA to make regulations, then "such actions are outside the sphere of legitimate legislative activity." (*Id.* 25:23).  The Regulations, Plaintiffs argue, were made "based on an exercise of power by the Executive Branch of Nevada State government that was not granted legitimately." (*Id.* 26:26–27).  Plaintiffs further argue, "Neither the Governor nor the Labor nor the Insurance Commissioners may grant to themselves authority which the MWA expressly reserves to the courts." (*Id.* 27:2–4).  For this proposition, Plaintiffs cite Nev. Const. Art., 15 § 16(b), which states that employees claiming violations may bring them in court. (*Id.* 27:4–6).

The Court disagrees that the Labor Commission did not have authority to make the Regulations.  Despite no specifics regarding regulations in the MWA, NRS § 607.160 specifically states:

> 1. The Labor Commissioner:
> (a) Shall enforce all labor laws of the State of Nevada:
>> (1) Without regard to whether an employee or worker is lawfully or unlawfully employed; and
>> (2) The enforcement of which is not specifically and exclusively vested in any other officer, board or commission.
> (b) May adopt regulations to carry out the provisions of paragraph (a).

Nev. Rev. Stat. § 607.160(1).  The Court finds this statutory language sufficient to supply the Labor Commissioner with the authority to establish the challenged regulations.  The mere fact that the MWA allows employees to bring claims in court does not preclude the Labor Commissioner from enforcing labor violations pursuant to the MWA under her authority to enforce Nevada's labor laws.  Further, the Court agrees with Defendant's analysis of the four factors demonstrating that the promulgation of the Regulations constituted legislative activity.  The Regulations were not ad hoc, but rather, they formulated policy pursuant to the requirements of the Nevada Administrative Procedures Act ("Nevada APA"), and they apply to the public at large.  The Regulations are formally legislative in nature, as they were approved

through the Nevada APA process.  Finally, they bear the hallmarks of traditional legislation, as they were formally codified in the Nevada Administrative Code.  Accordingly, the Court finds that the Labor Commissioner had legislative immunity to promulgate the Regulations.  The Court dismisses claim three with prejudice.[5]

**D.  Failure to State a Claim**

**1.  Claim One – ERISA Preemption**

Defendant does not argue that Plaintiff failed to state a claim for ERISA preemption.  (*See* MTD 22:2–25:7) (arguing only failure to state § 1983 claims).  However, Intervenor's Motion to Dismiss contends that "Section 16 is not preempted by ERISA Preemption."  (Intervenor MTD 4:2–16, ECF No. 76).

ERISA applies where an "employee benefit plan" is in place. *See Dist. of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 127 (1992).  An employee benefit plan is defined by statute as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3).  An "employee welfare benefit plan" governed by ERISA is:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, scholarship funds, or prepaid legal services, or . . .

---

[5] While Defendant argues that the statute of limitations bars the Complaint (*see* MTD 21:3–22:1), the Court finds no merit in this argument regarding the remaining two claims for ERISA preemption and § 1983 equal protection violation.  Plaintiffs argue, and the Court agrees, that these are alleged "ongoing violations," and therefore, the statute of limitations is not applicable. (Pls.' Resp. 27:24).  The cases cited by Defendant do not convince the Court otherwise. *See, e.g.*, *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180 (9th Cir. 2010) (employee action for benefits that is inapplicable to the present case); *McDougal v. Cty. of Imperial*, 942 F.2d 668, 674–75 (9th Cir. 1991) (finding a continuing impact but not a continuing violation, wherein the former is not actionable, but the latter would have been).

1   *Id.* § 1002(1).

2       In determining the reach of ERISA preemption, "the purpose of Congress is the ultimate

3   touchstone." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8 (1987).  Section 514(a) of

4   ERISA, 29 U.S.C. § 1144, provides:

5
        Except as provided in subsection (b) of this section, the provisions of this subchapter and
6       subchapter III of this chapter shall supersede any and all State laws insofar as they may
        now or hereafter relate to any employee benefit plan described in section 1003(a) of this
7       title and not exempt under section 1003(b) of this title.

8   29 U.S.C. § 1144(a).  Accordingly, "[i]f a state law 'relate[s] to . . . employee benefit plan[s],'

9   it is pre-empted." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987).

10      Plaintiffs' SAC alleges that the MWA and Regulations "are an unlawful intrusion on the

11  comprehensive federal framework for the administration and regulation of employee benefit

12  plans." (SAC ¶ 55).  Further, Plaintiffs allege that NAC 608.102[6] improperly "dictates the type

13  of health care a nonunionized employer must offer to 'qualify to pay an employee' the lower

14  tier minimum wage rate." (*Id.*).  Plaintiffs further allege that "the Amendment and Regulations

15  have impermissible 'connection with' ERISA plans that interfere with the uniformity of plan

16  administration" because they have "radically impacted and altered the uniform administration

17  of health benefits offered by Nevada's employers." (*Id.* ¶ 56, 58).  According to Plaintiffs'

18  allegations, "The Regulations also impermissibly impose administrative requirements on health

19  _____

20  [6] NAC 608.102 requires the employer seeking to pay the lower rate under the MWA to offer a health insurance
    plan which:
21          (a) Covers those categories of health care expenses that are generally deductible by an employee on his
            individual federal income tax return pursuant to 26 U.S.C. § 213 and any federal regulations relating
22          thereto, if such expenses had been borne directly by the employee; or
        (b) Provides health benefits pursuant to a Taft-Hartley trust which:
23              (1) Is formed pursuant to 29 U.S.C. § 186(c)(5); and
                (2) Qualifies as an employee welfare benefit plan:
24                  (I) Under the guidelines of the Internal Revenue Service; or
                    (II) Pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §
25          1001 *et seq*.
    NAC 608.102(1).

benefits plans through the employer-plan sponsors not required by ERISA," including "a complex set of rules for determining whether employee share of premium of qualified health insurance exceeds 10 percent of gross taxable income" under NAC 608.104. (*Id.* ¶ 61) (internal quotation marks omitted).

Intervenor argues that "[i]t is entirely the employer's choice" because "an employer may fully discharge its obligations under Section 16 by paying the higher wage rate." (Intervenor MTD 4:7–8). Intervenor asserts that because of the two-tier option, the MWA functions as "an indirect economic influence" which does not "bind plan administrators," and therefore, does not impact ERISA. (*Id.* 4:10–16).

The Court finds that Plaintiffs have properly alleged an ERISA preemption claim. The MWA and its Regulations literally reference ERISA and involve defining insurance coverage. The Court finds that the additional administrative requirements alleged by Plaintiffs are sufficient to survive dismissal on the pleadings.[7] Plaintiffs satisfactorily allege that the MWA and Regulations impact their uniform administration of health benefits under ERISA. The optional nature of the MWA's two tiers does not mitigate the harms alleged in Plaintiffs' SAC. Accordingly, claim one survives Defendant and Intervenor's Motions to Dismiss.

### 2.  *Claim Four – Equal Protection Violation under § 1983*

Lastly, Defendant argues that claim four fails "to establish a violation of the Equal Protection Clause of the Fourteenth Amendment based upon a distinction between employers whose employees are covered by a Collective Bargaining Agreement and those who are not." (MTD 24:12–14).[8]

---

[7] The Court notes that this determination does not opine on the merits of the ERISA preemption claim, but rather, the Court only finds that this claim survives a Rule 12(b)(6) challenge.

[8] For this claim, the pertinent part of the MWA states:
    The provisions of this section may not be waived by agreement between an individual employee and an employer. All of the provisions of this section, or any part hereof, may be waived in a bona fide

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Equal Protection Clause requires the government to treat all similarly situated persons alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (citing *Sullivan v. Stroop*, 496 U.S. 478, 485 (1990)); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002).  Disparate government treatment will survive rational basis scrutiny "as long as it bears a rational relation to a legitimate state interest." *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir. 1996).  In order to state a claim for an equal protection violation, a plaintiff must plead facts that, if true, would show that the governing body acted irrationally and in a manner "unrelated to the achievement of any combination of legitimate purposes." *Vance v. Bradley*, 440 U.S. 93, 97 (1979).

Plaintiffs' SAC alleges:

> The Amendment draws irrational, arbitrary, and discriminatory distinctions between employers whose employees are covered by Collective Bargaining and employers whose employees are not covered by Collective Bargaining by allowing employers who negotiate Collective Bargaining Agreements with unions to be exempt from the requirements of the Amendment and, by extension, therefore, the Regulations. The Amendment, and by extension the Regulations, thereby discriminates between certain types of trades, workforces, and businesses, requiring increased costs of doing business in the state for some employers over others without a fair and substantial relation to the object of the law.

---

collective bargaining agreement, but only if the waiver is explicitly set forth in such agreement in clear and unambiguous terms.
Nev. Const. art. 15, § 16(B).

(SAC ¶ 95). Defendant argues that there are "several plausible [rational] reasons" for the collective bargaining distinction, "including the idea that a collective bargaining unit protects the interests of union members with employers better than an ad hoc negotiation between an employer and employee." (MTD 24:26–25:1).[9] Additionally, as Intervenor's Motion to Dismiss points out, "Opt-outs for collective bargaining are not new or unusual." (Intervenor MTD 7:9–10). Intervenor cites to *Livadas v. Bradshaw*, 512 U.S. 107, 131–32 (1994) for the proposition that "although state and local labor standards laws must be applied equally to employees engaged in collective bargaining and those who are not, these laws may have explicit allowances for an employer and employees to come to a different deal through collective bargaining." (*Id.* 7:11–14). The *Livadas* Court emphasized that these "narrowly drawn opt-out provisions" were permissible when the "union-represented employees [also] have the full protection of the minimum standard." *Livadas*, 512 U.S. at 131.

Plaintiffs respond that the MWA was drafted by Intervenor "to disadvantage the group burdened by the law, non-unionized employers." (Pls. Resp. 32:12–13). Citing *Romer v. Evans*, 517 U.S. 620, 632 (1996), Plaintiffs argue, "A law drafted by a special interest group that is designed to burden a specific group—and benefit that same special interest group—is a classification the Equal Protection Clause was intended to prevent." (*Id.* 32:13–15). Specifically, "[b]urdening this disadvantaged group [of non-unionized employers] for no reason other than to benefit the drafters of the Amendment is not rational." (*Id.* 32:21–22).[10]

The Court finds Plaintiffs' argument unavailing. The Court may uphold a law under equal protection for any conceivable rational basis. The basis suggested by Defendant and

---

[9] Intervenor similarly suggests as the rational basis: "Through collective bargaining, employees have greater ability to obtain better conditions of employment than employees have acting alone." (Intervenor MTD 7:27–8:1).

[10] Plaintiffs' Response to Intervenor's Motion to Dismiss included a substantially similar (if not word-for-word identical) argument regarding the sufficiency of its equal protection claim. (Pls.' Resp. to Intervenor MTD 18:14–20:4, ECF No. 83).

Intervenor regarding the benefit in bargaining power for employees covered by a collective bargaining agreement is sufficient.  The MWA does not present the same concern regarding "animus" as the Supreme Court found in *Romer*.  Moreover, the Court finds that the MWA's opt-out provision is narrowly drawn.  Unionized employees maintain the protection of the federal minimum wage standard, and such distinctions regarding collective bargaining have been upheld by the Supreme Court previously. *See Livadas*, 512 U.S. at 131.  Accordingly, the Court dismisses Plaintiffs' equal protection claim.  Claim four is dismissed with prejudice.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that the Clerk of the Court shall substitute Barbara Richardson for Defendant Amy L. Parks.

**IT IS FURTHER ORDERED** that Defendants Sandoval and Chambers' Motion to Dismiss (ECF No. 54) is **GRANTED in part, DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant Richardson's Motion to Dismiss (ECF No. 57) is **GRANTED**.

**IT IS FURTHER ORDERED** that Intervenor's Motion to Dismiss (ECF No. 76) is **GRANTED in part, DENIED in part**.

**IT IS FURTHER ORDERED** that Defendants Sandoval and Richardson are dismissed.  Claims two, three, and four are dismissed with prejudice.  Claim one remains against Defendant Chambers.

**DATED** this ___28___ day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court